IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                           PLAINTIFF/RESPONDENT

v.                          Criminal No. 5:19-cr-50083-TLB-MEF-4
                            Civil No. 5:21-cv-05072-TLB-MEF

CRAIG RYAN KELLEY                                    DEFENDANT/MOVANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Currently before the Court is a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed on April 16, 2021, by the *pro se* Defendant/Movant, Craig R. Kelley ("Kelley").[1]   The United States filed its response on May 11, 2021.  (ECF No. 291).  An evidentiary hearing is not warranted in this matter, as the § 2255 motion, the files, and the records in this case conclusively show that Kelley is not entitled to relief. *See* 28 U.S.C. § 2255(b); *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007) ("No hearing is required when the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which they are based").   For the reasons discussed below, it is recommended that Kelley's § 2255 motion be denied and dismissed with prejudice.

## I.    BACKGROUND

This case involves a conspiracy to distribute methamphetamine in Northwest Arkansas. Kelley and several co-conspirators, DeJohn Lequor Alexander ("Alexander"), Joseph A. James ("James"), Marcus Alan Jones ("Jones"), and Michael James Smith ("Smith"), were initially

---

[1] In his motion, Movant spells his last name "Kelly" rather than "Kell**e**y."   The Court notes that throughout this file Movant's last name is spelled Kelley.   His last name is also spelled Kelley on the Bureau of Prisons inmate locator, #15604-010.   https://www.bop.gov/inmateloc/ (accessed May 20, 2021).   The Court will continue to use the spelling, Kelley.

indicted on August 16, 2019.  (ECF No. 15).  On November 20, 2019, a First Superseding Indictment was filed.  (ECF No. 54).  The First Superseding Indictment added two additional co-conspirators as defendants, Zeache Rose ("Rose") and Cherish Gibbons ("Gibbons").[2]  *Id*.  The charges against Kelley did not change.  *Id*.

A Second Superseding Indictment was filed on March 4, 2020, charging Kelley with offenses in Counts One, Five, Seven, Eight, Ten and Eleven.  (ECF No. 112).  Count One alleged that Kelley and six co-conspirators "did knowingly and intentionally combine, conspire, confederate and agree with each other, and with others known and unknown to the Grand Jury to distribute more than five hundred (500) grams of a mixture or substance that contained a detectible amount of methamphetamine."  *Id*. at 1.  Counts Five, Seven, and Eight charged Kelley with the distribution of more than five grams of methamphetamine on specified dates.  *Id*. at 2-4.  Count Ten charged that Kelley "did knowingly use and carry a firearm, . . . during and in relation to a drug trafficking crime . . . that is, knowingly and intentionally distributing more than five (5) grams of methamphetamine, . . . which is the offense described in Count Five."  *Id*. at 4-5.  Count Eleven charged that Kelley "knowing that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess [a firearm] . . . said firearm having been shipped and transported in interstate commerce."  *Id*. at 5.

On May 1, 2020, Kelley appeared with counsel before the Honorable Timothy L. Brooks, U. S. District Judge, for a change of plea hearing.  (ECF No. 141).  Pursuant to a written Plea Agreement, Kelley entered a plea of guilty to Count Eight of the Second Superseding Indictment, charging him with the knowing and intentional distribution of more than five (5) grams of

---

[2] Cherish Gibbons has yet to be arrested.

methamphetamine on or about April 25, 2019.  (ECF No. 142, ¶¶ 1, 5 (26.089 grams of actual methamphetamine)).   The Court determined that Kelley's guilty plea was voluntary, supported by a factual basis, and his guilty plea was accepted.  (ECF No. 141 at 2).   Sentencing was deferred pending a presentence investigation.  *Id*.

The Initial Presentence Investigation Report ("PSR") was filed on June 30, 2020.  (ECF No. 148).   Kelley was found to be accountable for a total amount of 4.334 kilograms of methamphetamine (actual); his total offense level was calculated as 35; his criminal history category as VI because he was a career offender; and the advisory guideline range as 292-365 months.[3]   *Id*. at 12, 13, 21, 32.   Kelley filed objections (ECF No. 166) to the Initial PSR on July 7, 2020, amended objections (ECF No. 178) on July 21, 2020, and second amended objections (ECF No. 188) on July 27, 2020.

The only objection Kelley made which had a bearing on the Guidelines calculation was his objection to paragraphs 38 through 41 of the Initial PSR.  (ECF No. 188 at 1).   These paragraphs described the seizure of methamphetamine from Kelley's vehicle in New Mexico on May 19, 2019.[4]  (ECF No. 148 at 9).   Kelley was driving the vehicle and co-defendant Joseph James was a passenger in the vehicle.  *Id*.   The vehicle had been tracked using a pen register device on James' cellphone and real-time Global Positioning System ("GPS") monitoring.  *Id*.   The vehicle was stopped and searched in Albuquerque, New Mexico.  *Id*.   A backpack located in the rear seat of the vehicle contained 5.52 kilograms of suspected methamphetamine.  *Id*.   Kelley declined to speak with agents following the stop.  *Id*.   James admitted he had agreed to transport the drugs

---

[3] The United States Sentencing Commission Guidelines Manual for 2018 was used in preparing the PSR.  (ECF No. 148, ¶ 12).
[4] Kelley's objection states the date of seizure as May 20, 2019.  (ECF No. 188, ¶ 1).

3

from Los Angeles, California, to Northwest Arkansas, and that the drugs were delivered to him in a backpack.  *Id*.  James stated Kelley had no knowledge of the drug transaction.  *Id*. Responding to this objection, the Probation Officer added a paragraph 40a in the Final PSR which stated that James later met with agents of Homeland Security Investigations and "admitted to conspiring with Kelley to purchase the methamphetamine in California, and that both he and Kelley would be benefiting financially from that purchase."  (ECF No. 197 at 10; ECF No. 197-1 at 2).   Further, it was noted that James later appeared at a hearing and "testified under oath as to both his and Kelley's involvement in purchasing the methamphetamine in California during May of 2019, prior to being apprehended with that methamphetamine in New Mexico."  (ECF No. 197 at 10).   Specifically, James stated they traveled to California to purchase the methamphetamine themselves because they "were out."  *Id*.

Kelley appeared for sentencing on August 12, 2020.   (ECF No. 202).   He persisted in his argument that there was no evidence he had knowledge of the drugs when his vehicle was stopped in New Mexico on May 19, 2019.  (ECF No. 288 at 15-17, 20).   He relied on James' statement made on the date of the stop and seizure that Kelley had no knowledge about the drugs.  *Id*.   Judge Brooks disagreed, finding that under the doctrines of constructive possession and relevant conduct Kelley was accountable for the quantity of actual methamphetamine seized from his vehicle in New Mexico.   *Id*. at 21-24.

Kelley was sentenced to a term of 240 months imprisonment, five years supervised release, a $3,900 fine, and a $100 special assessment.   (ECF No. 202; ECF No. 288 at 45-46, 48). Judgment was entered on August 19, 2020.   (ECF No. 203).   Kelley did not pursue a direct appeal.

## II.    DISCUSSION

Section 2255(a) allows "[a] [federal] prisoner in custody under sentence by a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."   28 U.S.C. § 2255(a).

Relief under § 2255 requires a showing of constitutional or jurisdictional error, or a "fundamental defect" resulting in a "complete miscarriage of justice."   *Davis v. United States*, 417 U.S. 333, 346 (1974).   A movant "must clear a significantly higher hurdle than would exist on direct appeal."   *United States v. Frady,* 456 U.S. 152, 166 (1982).

Kelley asserts three grounds for relief: (1) counsel failed to properly advise him prior to his guilty plea to Count Eight that the Government could use relevant conduct on all other counts dismissed or not being pled to, including the 500 grams possessed by co-defendant Alexander in Count Nine (ECF No. 280 at 3-6); (2) the unreasonableness of the sentencing disparity between Kelley and the other co-defendants (*id.* at 6-9); and (3) the Government breached the plea agreement to dismiss all other counts of the Second Superseding Indictment by allowing the Court to consider the drug amounts mentioned in Counts Two, Three, Six, and Nine (*id.* at 9-11).

### A.    FAILURE TO ADVISE OF RELEVANT CONDUCT

A criminal defendant has a constitutional right to the effective assistance of counsel. *Martinez v. Ryan*, 566 U.S. 1, 12 (2012); *Strickland v. Washington*, 466 U.S. 668, 686 (1984).   A claim of ineffective assistance of counsel is appropriately raised under § 2255 rather than on direct

appeal. *United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003).

The Court evaluates ineffective assistance of counsel claims using the standards set forth by the Supreme Court in *Strickland*. To prevail on his ineffective assistance of counsel claims, Kelley must prove: first, that counsel's performance was so deficient it could not constitute counsel as guaranteed the defendant by the Sixth Amendment, *Strickland*, 466 U.S. at 687, and second, that counsel's deficient performance materially and adversely prejudiced the outcome of the case, *Furnish v. United States of America*, 252 F.3d 950, 951 (8th Cir. 2001).

Regarding the first prong, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The Supreme Court instructed:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id*. at 689.

A reviewing court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).

For the second prong, to prove an error was prejudicial Kelley must establish that "there is

a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "[N]ot every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id*. at 693.

Kelley claims that prior to his entry of a guilty plea to Count Eight of the Second Superseding Indictment his counsel failed to properly advise him that the Government could use relevant conduct on all other counts of the indictment, including "the 500 grams possessed" by co-defendant Alexander. (ECF No. 280 at 3). He maintains that counsel failed to "adequately explain the consequences [s]urrounding a plea" to him. *Id.* Kelley's claim is belied by the record.

Initially, the Court notes that Kelley had no physical or mental disabilities that impaired his ability to understand the terms of the plea agreement, including the provision regarding relevant conduct, or his ability to understand Judge Brooks' explanation of the concept of relevant conduct during the change of plea hearing. (ECF No. 197 at 30; ECF No. 287 at 9). There was no language barrier; Kelley had graduated high school; and he had furthered his education in college and by obtaining a certification as an electrician. (ECF No. 197 at 31; ECF No. 287 at 8).

The written Plea Agreement contained the following provision regarding relevant conduct:

> At the sentencing hearing, the United States will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to the Defendant's background, character and conduct, including the conduct that is the subject of this investigation for which he has not been charged up to the date of this Agreement, and/or which is the basis for any of the counts which will be dismissed pursuant to this [A]greement, as provided by § 1B1.3 of the Sentencing Guidelines. (ECF No. 142 at 8, ¶ 18).

By signing the Plea Agreement, Kelley made the following representations: that he had

read the agreement (or had it read to him), and he carefully reviewed every part of it with defense counsel; that he fully understood the agreement and was not under the influence of anything that could impede his ability to fully understand the agreement; that no promises, agreements, understandings, or conditions had been made or entered into in connection with the decision to plead guilty except those set forth in the agreement; that he was satisfied with the legal services provided by defense counsel in connection with the agreement and matters related to it; and, that he had entered into the Plea Agreement freely, voluntarily, and without reservation, and his desire to enter a plea of guilty was not the result of threats or coercion directed at the Defendant or anyone connected with the Defendant. (ECF No. 142 at 11, ¶ 30). Defense counsel represented that he had carefully reviewed every part of the agreement with Kelley; he had explained the ramifications of the agreement to Kelley, and he believed Kelley understood the agreement, including what rights were being lost by pleading guilty, and what the United States agreed to do in exchange for the plea of guilty; and that he believed Kelley's decision to enter into the agreement was an informed and voluntary one. *Id.* at 11, ¶ 31.

During the change of plea hearing on May 1, 2020, Kelley was asked a series of questions regarding his counsel, Mr. Christopher Smiley. (ECF No. 287 at 9-10). Kelley responded that he was satisfied with the amount of time Mr. Smiley worked on the case; Mr. Smiley had explained the nature of the charges against him; and Mr. Smiley answered all his questions. *Id.* Kelley stated that he was fully satisfied with Mr. Smiley's legal services and representation. *Id.* at 10.

Judge Brooks also fully explained the concept of relevant conduct during the change of plea hearing. (ECF No. 287 at 18-19). Kelley was advised that the concept "allows the government to bring any and all information about you that the government has developed as a

result of its investigation in this case.   This information can be brought to the Court's attention and the Court may use it for sentencing purposes, regardless of whether it has to do specifically with this particular incident of distribution as charged in Count Eight." *Id*.   Kelley was informed that the Court could consider the factual circumstances pertaining to the other charges against him in the indictment, and even uncharged conduct could be considered "as long as it's related to the charge in which you were ultimately investigated and convicted." *Id*. at 19.   Kelley told the Court that he understood this. *Id*.

Thus, the record plainly shows that Kelley was under no physical or mental impairments which could have adversely affected his ability to understand the Plea Agreement.   The concept of relevant conduct was explicitly addressed in the written Plea Agreement, which Kelley acknowledged reading, discussing with his counsel, and understanding.   And the concept of relevant conduct was explained in detail to Kelley by the Court during the change of plea hearing, with Kelley again expressing his understanding.   All of this occurred prior to the entry of Kelley's guilty plea to Count Eight of the Second Superseding Indictment.   Accordingly, Kelley has failed to demonstrate any deficient performance by his counsel regarding the Court's consideration of relevant conduct at sentencing.

Since Kelley has failed to establish that his counsel's performance was deficient regarding the issue of relevant conduct, there is no need to address the second *Strickland* prong of prejudice. *See United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003) (if a movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim).   Even so, Kelley cannot establish prejudice.   As the Final PSR makes clear, Kelley was *not* held accountable for the 500 grams of methamphetamine in Count

9

Nine involving Alexander. Kelley was held accountable for 45.54 grams of methamphetamine on April 10, 2019 (Count Five), 55.16 grams of methamphetamine on April 22, 2019 (Count Seven), 26.08 grams of methamphetamine on April 25, 2019 (Count Eight), and the 4.208 kilograms of methamphetamine on May 20, 2019 (drugs seized from Kelley's vehicle in New Mexico), for a total amount of 4.334 kilograms of methamphetamine. (ECF No. 197 at 12, ¶ 52). The drug quantities Kelley was held accountable for were from those transactions and/or seizures he was directly involved in, and the Court properly considered such relevant conduct at sentencing.

Kelley is entitled to no relief on this claim.

## B.    SENTENCING DISPARITY

For his second ground for relief, Kelley argues that he received a harsher sentence than more culpable co-defendants. (ECF No. 280 at 6-7). Kelley contends he was a minor participant and maintains he should not have received the longest period of incarceration among the co-defendants. He restates his argument that he was wrongly held accountable for the drugs seized from his vehicle in May 2019 based on James' reported recantation of his statement that Kelley had no knowledge about the drugs found in his vehicle. *Id*. at 7-8. He also again erroneously maintains that he was held accountable for the 500 grams of methamphetamine related to Count Nine involving Alexander. *Id*. at 7. In sum, it is Kelley's belief that his sentence was substantively unreasonable and unjustifiably disparate from his co-defendants.

The Government first contends this claim is procedurally defaulted as it was not raised on direct appeal. (ECF No. 291 at 12-14). The failure to raise an issue on direct appeal ordinarily constitutes a procedural default and precludes a defendant's ability to raise that issue for the first time in a § 2255 motion. *Dejan v. United States*, 208 F.3d 682, 685 (8th Cir. 2000). When a

defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate "cause" and actual "prejudice," or that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996); and *United States v. Frady*, 456 U.S. 152, 167-68 (1982). "For cause to exist, the external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

Kelley was the first co-defendant sentenced in this case, having been sentenced on August 12, 2020. (ECF No. 202). The next co-defendant to be sentenced was Smith on October 2, 2020. (Case No. 5:19-cr-50083-TLB-5, ECF No. 218). The final[5] co-defendant to be sentenced, Jones, was just recently sentenced on April 14, 2021. (Case No. 5:19-cr-50083-TLB-3, ECF No. 276). Kelley could not have raised this issue on direct appeal because the factual basis for the claim was unknown and unavailable to him at the time when he could have pursued a direct appeal. As such, cause exists to excuse the procedural default, and the Court will consider the merits of Kelley's sentencing disparity claim.

The Government next argues that Kelley's sentence was reasonable. (ECF No. 291 at 14-17). It asserts that Kelley was not similarly situated with the other co-defendants. The Court agrees. Three of Kelley's co-defendants provided substantial assistance to the Government, and upon motion of the Government, they each received downward departures: James (six levels), Smith (five levels), and Rose (six levels). Another co-defendant, Jones, qualified for expanded safety valve relief pursuant to 18 U.S.C. § 3553(f). On the other hand, Kelley qualified as a career

---

5 Other than co-defendant, Cherish Gibbons, who has yet to be arrested.

offender which increased his total offense level.   Only Kelley and Smith had a criminal history category of VI, but as just noted, Smith received a five-level downward departure.   Kelley had the highest Guidelines sentencing range – 292 to 365 months.   Kelley did benefit from a downward variance to 240 months imprisonment at sentencing.   Co-defendant Alexander was sentenced to 97 months (Case No. 5:19-cr-50083-TLB-1, ECF No. 236); James was sentenced to 121 months (Case No. 5:19-cr-50083-TLB-2, ECF No. 254); Jones was sentenced to 120 months (Case No. 5:19-cr-50083-TLB-3, ECF No. 277); Smith was sentenced to 151 months (Case No. 5:19-cr-50083-TLB-5, ECF No. 219); and Rose was sentenced to 180 months (Case No. 5:19-cr-50083-TLB-6, ECF No. 263).   Regarding the quantity of drugs for which he was held accountable, as discussed above, Kelley was directly involved in each instance and was in at least constructive possession of the drugs found in his vehicle in New Mexico.   Further, Kelley was the only defendant who sold a weapon, an AR-15 semi-automatic rifle and 1,000 rounds of ammunition, in connection with the sale of drugs.   (ECF No. 197 at 7, ¶ 29).

The sentencing disparity between Kelley and the other co-defendants was not unwarranted. *See United States v. Plaza*, 471 F.3d 876, 880 (8th Cir. 2006) (no unwarranted sentencing disparity when co-defendants are not similarly situated; the district court need not sentence them to the same length of imprisonment); *see also United States v. Gallegos*, 480 F.3d 856, 859 (8th Cir. 2007) ("Disparity in sentences between a defendant who provided substantial assistance and one who provided no assistance . . . is not 'unwarranted'").   Further, Kelley's role in the offense and whether he qualified as a minor participant is an issue of fact on which he bore the burden of proof. *United States v. Johnson*, 358 F.3d 1016, 1018 (8th Cir. 2004).   A minor participant is defined by the Guidelines as one "who is less culpable than most other participants in the criminal activity,

but whose role could not be described as minimal." U.S.S.G. § 3B1.2, Cmt. n.5. The "same relevant conduct is used not only in determining the defendant's base offense level, but also for any role in the offense adjustments made pursuant to Chapter 3 of the Guidelines." *United States v. McCarthy*, 97 F.3d 1562, 1574 (8th Cir. 1996). While Kelley did not receive a two-level reduction for being a minor participant in the offense conduct, the Court notes that it would have resulted in a total offense level of 33, which when coupled with Kelley's criminal history category of VI, would have yielded a recommended Guidelines sentence range of 235 to 293 months. Kelley was sentenced on the lower end of this range.

There is no unwarranted sentencing disparity because Kelley was not similarly situated with his other co-defendants. Kelley is not entitled to relief on this claim.

## C.    BREACH OF THE PLEA AGREEMENT

Kelley's final argument is that the Government breached the plea agreement. (ECF No. 280 at 9-11). He asserts that the Government agreed to dismiss all other counts of the indictment, but that during sentencing the Government did not uphold its promise and allowed the Court to consider Counts Two, Three, Six, and Nine. *Id*. at 10. According to Kelley, this allowed him to be held accountable for the 50 grams of methamphetamine possessed by Smith in Count Two and the 550 grams possessed by Alexander in Count Nine. *Id*. The Government contends Kelley procedurally defaulted this claim, and alternatively, that the claim has no merit. (ECF No. 291 at 17-20).

The United States Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal." *Frady,* 456 U.S. at 165; *see also United States v. Mosley*, 505 F.3d 804, 808 (8th Cir. 2007) (breach of plea agreement raised on direct appeal and

13

reviewed under *de novo* standard).  Kelley took no direct appeal.  His plea agreement did not contain any waiver of the right to appeal.  As previously stated, the failure to raise an issue on direct appeal generally constitutes a procedural default and precludes the defendant from raising the issue for the first time in a § 2255 motion.  *Dejan*, 208 F.3d at 685.  A procedural default may be overcome by showing: (1) a cause that excuses the default, and (2) actual prejudice from the alleged error.[6]  *Thomas v. Payne*, 960 F.3d 465, 469 (8th Cir. 2020) (citation omitted).  "For cause to exist, the external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey,* 499 U.S. at 497.  Kelley has failed to allege any impediment that would have prevented him from raising the breach of plea agreement claim on direct appeal.  He has, therefore, failed to establish cause to excuse his procedural default on this issue, nor would he be able to establish prejudice from the alleged breach.

The record also shows no breach of the plea agreement by the Government.  When a guilty plea is induced by an agreement, the government must abide by its terms.  *Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so it can be said to be part of the inducement or consideration, such promise must be fulfilled"); *see also United States v. E.V.*, 500 F.3d 747, 754 (8th Cir. 2007); Fed. R. Crim. P. 11(c)(1).  The district court, however, is not bound by the plea agreement.  *United States v. Martinez-Noriega*, 418 F.3d 809, 811 (8th Cir. 2005); Fed. R. Crim. P. 11(c)(3)(A).  "After the district court has accepted a guilty plea, the government's material breach of the plea agreement

---

[6] "A procedurally defaulted claim may also be reviewed if the party seeking § 2255 relief can show that the alleged error 'has probably resulted in the conviction of one who is actually innocent.'"  *Roundtree v. United States*, 885 F.3d 1095, 1098 n.3 (8th Cir. 2018) (quoting *Bousley v. United States,* 523 U.S. 614, 623 (1998)).  Kelley makes no such assertion of actual innocence.

violates the Defendant's due process rights."   *United States v. Mosley*, 505 F.3d 804, 810 (8th Cir. 2007).

The United States agreed that once the Plea Agreement was accepted by the Court and sentence was pronounced, it would move to dismiss the remaining counts of the Second Superseding Indictment pending against Kelley.   (ECF No. 142 at 1, ¶ 1).   At sentencing, and after imposition of sentence was announced by the Court, the Government moved to dismiss Count One (as it pertained to Kelley), as well as Counts Five, Seven, Ten, and Eleven.   (ECF No. 288 at 49).   The motion was granted by the Court.   *Id.*   The Judgment also reflects that the United States moved to dismiss Counts One, Five, Seven, Ten, and Eleven of the Second Superseding Indictment – each of which charged offenses against Kelley.   (ECF No. 203 at 1).   Kelley is not mentioned in Count Two (money laundering against Smith and Rose) or Count Nine (possession with intent to distribute against Alexander).   Neither of these two counts were used in calculating the total amount of drugs[7] attributable to Kelley.   Kelley is simply mistaken.   The Government did not breach the plea agreement.

Kelley is not entitled to relief on this claim.

### III.   CONCLUSION

For the reasons and upon the authorities discussed above, it is recommended that Kelley's Motion to Vacate filed pursuant to 28 U.S.C. § 2255 (ECF No. 279) be **DENIED** and **DISMISSED WITH PREJUDICE**.

An appeal may not be taken in this matter unless the Court issues a certificate of appealability, which shall be issued only if "the applicant has made a substantial showing of the

---

[7] In fact, Count Two contains no reference to a specific drug amount.   (ECF No. 112 at 2).   The Count only refers to a conspiracy to distribute a mixture or substance that contained a detectible amount of methamphetamine.   *Id.*

denial of a constitutional right." 28 U.S.C. §§ 2253(c)(1) and (c)(2); *see also Copeland v. Washington*, 232 F.3d 969, 977 (8th Cir. 2000). A "substantial showing" is a showing that "issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Randolph v. Kemna*, 276 F.3d 401, 403 n.1 (8th Cir. 2002) (quotation marks and citation omitted). Based upon the above stated analysis of Kelley's § 2255 motion, the undersigned does not believe there is any basis for the issuance of a certificate of appealability and, therefore, recommends that a certificate of appealability be denied.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 28th day of May 2021.

/s/ *Mark E. Ford*
_____

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

16